DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 19-CR-0383 CRB |
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| HENRY JOVANY SEVILLA SEVILLA, | Judge: Hon. Charles R. Breyer<br>Sentencing Date: October 7, 2020<br>Time: 1:00 p.m. |
| Defendant. | |

**I.   INTRODUCTION**

In August 2019, federal agents arrested Defendant Henry Jovany Sevilla Sevilla after finding him in possession of methamphetamine, cocaine, and cocaine base (crack). Agents encountered Sevilla Sevilla while executing a federal search warrant at his residence on 62nd Avenue in Oakland (the "62nd Avenue House") as part of a takedown of several drug trafficking organizations operating in the East Bay and Tenderloin neighborhood of San Francisco. Agents seized 2.45 grams of cocaine, 11.67 grams of cocaine base, a digital scale with cocaine residue, and packaging materials from a room that Sevilla

Sevilla shared with another adult female and her small baby. When agents entered the house, the baby was asleep on one of the two beds in the room. Agents determined that Sevilla Sevilla and the other woman were not affiliated with each other, but simply shared the residence with other undocumented individuals. The drugs and paraphernalia were located on Sevilla Sevilla's side of the room where agents also found his wallet. Outside, hidden within an audio speaker in a storage shed, agents seized an additional 141.57 grams of cocaine base, 3.9 grams of pure methamphetamine, and 7.5 grams of heroin. At the time of Sevilla Sevilla's arrest, it remained unclear whether he conspired with any of the drug trafficking organizations that agents were investigating, or if he merely happened to be squatting in the house with other individuals. Upon further investigation, agents determined that Sevilla Sevilla was in frequent communication with Arnold Cruz Rodriguez, a street-level dealer working for Andy Reanos-Moreno. Surveillance placing Cruz Rodriguez and Reanos-Moreno at the 62nd Avenue house led to agents applying for and receiving the warrant authorizing the search of the property. Further, based on wire receipts found in Sevilla Sevilla's bedroom, agents determined that prior to the 62nd Avenue House, Sevilla Sevilla lived at another location on 105th Avenue in Oakland that was also suspected to be affiliated with Reanos-Moreno.

The evidence demonstrates that Sevilla Sevilla worked as a street-level drug dealer for the Reanos-Moreno organization. This Court should sentence the defendant to a period of custody that balances several factors; the Court should consider the volume of drugs seized, the fact that defendant possessed multiple types of drugs – some of which were stored in the same room where a baby lived, and defendant's relative role in the organization. The government believes a custodial sentence followed by a mandatory three years of supervised release is appropriate when balancing the aggravating and mitigating factors.

## II. PROCEDURAL POSTURE

On August 7, 2019, the Honorable Donna M. Ryu, U.S. Magistrate Judge, issued a Criminal Complaint charging Sevilla Sevilla with possession with the intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). Dkt. 1.

The following week, a federal grand jury returned a three-count Indictment charging the same

conduct at issue in the Criminal Complaint. Dkt. 5. The case was initially assigned to the Honorable James Donato, U.S. District Court Judge. At the time, because Sevilla Sevilla's connection to Reanos-Moreno were unclear, the government felt it did not have a clear basis to file a related case notice. Following a request from defense for disclosure of materials in *United States v. Reanos-Moreno, et al*, No Cr 19-0381 CRB, the government filed a related case notice citing the overlap in discovery between the matters. *See United States v. Jose Arteaga Vasquez and Rosman Arteaga Vasquez,* Dkt. 38. On January 23, 2020, the Court related this matter to the *Reanos-Moreno* case and the other related. Dkt. 17.

At this time, the parties anticipate that the defendant will enter a guilty plea pursuant to a plea agreement with the government on October 7, 2020. In anticipation of the hearing, the defendant consented to the preparation of a modified Presentence Report ("PSR"). The Court can choose to impose sentence directly following the change of plea hearing if it finds on the record that under Rule 32(c)(1)(A)(ii) "the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553[.]" FED. R. CRIM. P. RULE 32(c)(1)(A)(ii).

### III.    SENTENCING GUIDELINES CALCULATIONS

As set forth in the parties' written plea agreement, the parties agree to the following Sentencing Guidelines calculation:

   a.   Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(7):                                26
        (At least 400 KG, but less than 700 KG of Converted Drug Weight)

   b.   Acceptance of Responsibility:                                                        - 3

   c.   Adjusted Offense Level:                                                               23

As detailed in the PSR, Sevilla Sevilla is a Criminal History Category II. (PSR ¶ 12.) Prior to this case, he was arrested by state authorities on December 9, 2018, and again just ten days later on December 19, 2018, for drug trafficking. (*Id.* ¶¶ 9, 15.) The first arrest resulted in a conviction for being an accessory after the fact, in violation of California Penal Code Section 32. (*Id.* ¶ 9.) Sevilla Sevilla was sentenced to a two-year terms of probation, which he was subject to at the time of his arrest

on the federal charges.  (*Id.*)  He was also arrested on June 20, 2019, for violation of a state court order.  (*Id.* ¶ 16.)

The Guidelines range for imprisonment associated with adjusted offense level 23 and Criminal History Category II is 51 to 63 months.

## IV. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines.  *Id.*  The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007).  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Here, the most important considerations are the nature and circumstances of the offense, the need to afford adequate deterrence, and the protection of the public.  18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C).

As the Court knows based on prior sentencings, in August 2019, federal agents arrested several individuals for drug trafficking based upon a nearly year-long federal wiretap investigation described in detail in a Criminal Complaint filed in *United States v. Reanos-Moreno, et al*, No Cr 19-0381 CRB.  (*See* 19-0381, Dkt. 1, Compl. (originally filed under 3:19-71162 TSH).)  As described in the Complaint, the investigation uncovered a drug trafficking organization (DTO) led by Andy Reanos-Moreno.  Street-level drug dealers lived in houses and apartments in the East Bay that they obtained through the assistance of the DTO.  (*See* 19-0381, Dkt. 1, Compl. ¶¶ 17-26.)  On a near daily basis, the street-level dealers received a resupply of drugs from either Reanos-Moreno or another co-conspirator, which they would then sell in the Tenderloin.

During the investigation, agents identified the 62nd Avenue House as a suspected Reanos-Moreno redistributor house.  On January 26, 2019, at approximately 11:07 p.m., agents intercepted a

phone call between Reanos-Moreno and Arnold Cruz Rodriguez, who is also charged in case number 19-0381. Cruz asked Reanos-Moreno to "stop by 62nd." Reanos-Moreno asked for the cross street, to which Cruz responded, "62nd and Harmon." Approximately forty minutes later, Reanos-Moreno called Cruz and asked what he should prepare. Cruz asked for "8 of powder." When Reanos-Moreno indicated that he did not have any "powder," Cruz then asked for "3 of the black and 2 of the white." Based on their training and experience and investigation of this case, agents know that "powder" is a typical code word for "cocaine," that "black" is a code word for "heroin," and "white" is a code word that can be used for a variety of drugs including cocaine base and methamphetamine. Cruz, therefore, initially asked Reanos-Moreno for cocaine, and upon learning it was not available asked for heroin and another drug. Physical location data associated with Reanos-Moreno's car indicated that it was in the vicinity of the 62nd Avenue House before and after these calls.[1]

Later, in July and August 2019, federal agents and state officers saw Cruz walk out of the 62nd Avenue House and also saw his car parked on the corner directly outside the House.[2]

On August 6, 2019, agents executed a federal search warrant at the 62nd House. Prior to entering the house, agents saw Sevilla Sevilla enter and exit the residence through a side entrance and detained him. Inside, agents identified two additional adults, one woman, one man, and four juveniles, including an infant, living in the house. After speaking with the other individuals in the house, agents concluded that they were not affiliated with Sevilla Sevilla, but rather were undocumented individuals squatting in the 62nd House. They were connected with victim/witness services representatives.[3]

In the room that Sevilla Sevilla shared with the adult female and her infant, agents seized 2.45

---

[1] On August 5, 2020, the Honorable Elizabeth D. Laporte, issued a federal warrant authorizing the search of the 62nd House. *See* No 3:19-71175 EDL. The facts referenced here were set forth in an affidavit in support of an application for that search warrant. A copy of the warrant and application were produced to defense in this case, as authorized by the order sealing the warrant and the Protective Order in this matter. Because of personal protected information contained in the warrant and underlying application, the warrant remains under seal. The government will separately send a copy of the warrant to the Court prior to the change of plea hearing.

[2] *See supra*, n1.

[3] The facts referenced regarding the execution of the search warrant and the defendant's arrest are described in detail in a report prepared by agents of the Drug Enforcement Administration, which is attached as Exhibit A to the Declaration of Sailaja M. Paidipaty (filed concurrently with this memorandum).

net grams of cocaine and 11.668 net grams of cocaine base (crack). They also found a digital scale that tested positive for cocaine residue and plastic baggies that appeared to be packaging materials for drug sales. On one of the beds in the room, agents found Sevilla Sevilla's wallet, which contained his Honduran identification card. The drugs and drug paraphernalia were similarly found in Sevilla Sevilla's side of the bedroom. Finally, agents found international wire receipts reflecting the defendant's name and phone number on them. Further investigation revealed that prior to August 6, 2019, Sevilla Sevilla was in frequent communication with Arnold Cruz Rodriguez, a street-level dealer working for the Reanos-Moreno organization. This Court recently sentenced Cruz Rodriguez following his entry of a guilty plea to a drug trafficking conspiracy. *See* No Cr 19-0381-09 CRB. The addresses on the wire receipts were consistent with residences in Oakland that were also part of the Reanos-Moreno network.

A drug detection K9 provided a positive alert to a small shed on the property of the 62nd Avenue House, indicating that drugs were contained inside. Agents discovered several types of narcotics hidden within an audio speaker inside the shed. Drug testing completed at the DEA Western Laboratory confirmed the presence of over 140 net grams of cocaine base (crack), 7.5 net grams of heroin, and 3.9 grams of pure methamphetamine.

Sevilla Sevilla possessed a significant amount of drugs for resale. The seized cocaine base meets the threshold for a five-year mandatory minimum charge. A prior state conviction and multiple arrests failed to dissuade the defendant from giving up drug trafficking. Those prior arrests further establish that Sevilla Sevilla sold drugs in the Bay Area for at least eight months (the amount of time between his first arrest for drug trafficking in December 2018, and his arrest in this case in August 2019). Of great concern is that Sevilla Sevilla kept drugs in the open in a home where multiple children lived. When agents entered the house, an infant was asleep in the room that Sevilla Sevilla shared. Baggies of cocaine and crack lay in the open on a desk in the room near Sevilla Sevilla's bed.

As a street-level dealer working for Reanos-Moreno, Sevilla Sevilla contributed to an organized network of crime that floods this community with drugs. In sentencing the defendant, the Court should consider the quantity of drugs possessed by Sevilla Sevilla, his prior arrests and conviction, and

sentences imposed by this Court upon similarly situation dealers within the Reanos-Moreno organization.

## V. CONCLUSION

The government respectfully recommends the imposition of a custodial sentence, followed by three years of supervised release, and a mandatory $100 special assessment.

DATED: September 30, 2020                                    Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_/s_
SAILAJA M. PAIDIPATY
Assistant United States Attorney

7

UNITED STATES' SENTENCING MEMO.
NO. 19-0383 CRB